Chief Judge Fuld.
The defendant was arrested pursuant to an arrest warrant issued in 1965 for a traffic violation, speeding, committed in 1963. Immediately upon making the arrest, the police officer searched the defendant, took from his pocket a book of matches and, opening the match cover, found a sheet of paper which implicated him in the playing of policy. He was thereafter charged, tried and convicted for possession of a policy slip (Penal Law, § 975). On this appeal, the defendant complains about the denial of his pretrial motion — which was renewed and denied at the trial — to suppress the evidence uncovered in the search by the arresting officer.
There is no question, and the entire court agrees, that a police officer is not authorized to conduct a search every time he stops a motorist for speeding or some other ordinary traffic infraction. It is urged, however, that the officer is empowered to conduct a search, as incident to a lawful arrest, when the defendant is taken into custody for a traffic violation on a warrant of arrest, following his failure to appear in court pursuant to the summons initially issued. We find no basis for making such a distinction, concluding as we do that it not only would offend against the legislative design for the treatment of traffic offenders but would also exceed constitutional limits on search and seizure.
Section 155 of the Vehicle and Traffic Law expressly provides that “ A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment and shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof.” In line with this policy of not regarding traffic offenders as criminals, our statutes authorize law enforcement officials to issue summons to such persons in lieu of arrest (Vehicle and Traffic Law, § 207; N. Y. City Crim. Ct. Act, § 57) and, in point of fact, it is customary for policemen within the City of New York to do so (see Rules of Criminal Court of City of New *101 York, rule XII). However, since a traffic violation may serve as a predicate for an “ arrest without a warrant, pursuant to section [177] of the code of criminal procedure” (Vehicle and Traffic Law, § 155), the only question with regard to search and seizure is whether the officer is empowered to conduct a search as incident to such a lawful arrest. The fact that he has a choice of issuing a summons instead of taking the defendant into custody is completely beside the point. The authority of the police to search a traveler on the highway may not be made to turn on whether the officer, in the exercise of his discretion, forthwith arrests the traffic offender instead of merely summoning him to court.
Although, as a general rule, when an individual is lawfully arrested, the police officer may conduct a contemporaneous search of his person “ for weapons or for the fruits of or implements used to commit the crime ” (Preston v. United States, 376 U. S. 364, 367), we do not believe that the Legislature intended the rule to cover arrests for traffic violations. It is obvious that, except in the most rare of instances, there can be no “ fruits ” or “ implements ” of such infractions and the search, to be upheld, would have to be justified as one for weapons. But there is something incongruous about treating traffic offenders as noncriminals, on the one hand, and subjecting them, on the other, to the indignity of a search for weapons.
The search for weapons is a special exception to the proscription against warrantless searches, and it should not be extended beyond its purpose of securing the safety of the officer and preventing an escape. A motorist who exceeds the speed limit does not thereby indicate any propensity for violence or iniquity, and the officer who stops the speeder has not even the slightest cause for thinking that he is in danger of being assaulted. We can only conclude that, even though the 11 rules of criminal law are generally applicable ” to traffic violations (People v. Byron, 17 N Y 2d 64, 66), the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic infraction. (See, e.g., People v. Rodrigues, 47 Misc 2d 551, 555-556; State v. Quintana, 92 Ariz. 267, 268-269; People v. Blodgett, 46 *102 Cal. 2d 114, 116; People v. Mayo, 19 Ill. 2d 136; People v. Watkins, 19 Ill. 2d 11, 18; Lane v. Commonwealth, 386 8. W. 2d 743, 745 [Ky.]; People v. Lee, 371 Mich. 563, 567; People v. Zeigler, 358 Mich. 355, 361; Brinegar v. State, 97 Okla. Crim. 299; Ann., Lawfulness of Search of Motor Vehicle Following Arrest for Traffic Violation, 10 ALE 3d 314.)
We perceive no different legislative policy for dealing with a traffic offender who is given a summons at the scene and one who is taken into custody on an arrest warrant some time later after he fails to respond to the summons. The warrant does no more than authorize the police officer to make an arrest for an offense which he did not witness. It does not give him any greater power to conduct a search than he would have possessed had he actually seen the infraction and thereupon stopped the offender.
Nor does the nature of the offense change simply because the driver neglects to comply with a ‘ ‘ notice to appear in a given court on a given day ’. (People v. Scott, 3 N Y 2d 148, 151.) It is true that, upon his failure to answer the summons, he may thereafter be compelled to appear pursuant to a warrant but the statutory scheme does not contemplate treating him as a common criminal to be booked, photographed, fingerprinted and jailed. It is equally degrading — and most assuredly not the Legislature’s intention — to subject him to the affront of a search when one is not necessary for the proper, execution of the warrant. In short, no search for a weapon is authorized as incident to an arrest for a traffic infraction, regardless of whether the arrest is made on the scene or pursuant to a warrant, unless the officer has reason to fear an assault or probable cause for believing that his prisoner has committed a crime.
Indeed, this conclusion is also dictated by the constitutional prohibition against “ unreasonable searches and seizures”. (U. S. Const., 4th Amdt; N. Y, Const., art. I, § 12; see People v. Rodrigues, 47 Misc 2d 551, 555-556, supra; State v. Quintana, 92 Ariz. 267, 268-269, supra; People v. Watkins, 19 Ill. 2d 11, 18, supra; People v. Zeigler, 358 Mich. 355, 361, supra; see, also, Sobel, Current Problems in the Law of Search and Seizure, pp. 119-124.) As the Supreme Court of Illinois observed, “ A uniform rule permitting a search in every case of a valid arrest, *103 even for minor traffic violations, would greatly simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide. Other courts are in accord. They have refused to establish a uniform rule to govern all searches accompanying valid arrests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted.” (People v. Watkins, 19 Ill. 2d, supra, at p. 18.)
The judgment of conviction should be reversed, the defendant’s motion to suppress the evidence granted and the information dismissed.