OPINION OF THE COURT
Thomas A. Demakos, J.
An information has been filed against defendant charging him with violation of section 220.03 of the Penal Law (two counts) and section 511 of the Vehicle and Traffic Law; all class A misdemeanors. The charges are that on April 19, 1980, the defendant was operating a motor vehicle while his license was suspended and at the time did have in his possession a quantity of a controlled substance, to wit, cocaine.
REMEDY SOUGHT BY DEFENDANT
Defendant, claiming to be aggrieved by an unlawful search and seizure, has made a motion to suppress the quantity of controlled substance seized from his person on April 19, 1980, by Police Officer McPherson of the 48th Precinct in Bronx County.
Defendant has also made a motion for an order suppressing a statement made by him on April 19,1980, to McPherson on the ground that it was involuntarily made within the meaning of CPL 60.45.
*449 In this case, the People assert that the seizure of the cocaine from defendant’s person by McPherson was pursuant to an immediate search after the lawful arres Í of the defendant. The People have the burden, in the first instance, of going forward to show the legality of the officer’s conduct. Defendant, however, bears the ultimate burden of proving that the. evidence should be suppressed. (People v Berrios, 28 NY2d 361.
The People also assert that the statement made by the defendant was voluntarily made after the lawful arrest and after defendant had been given the Miranda warnings by Police Officer McPherson. Here, the People have the burden of proving that a defendant voluntarily and intelligently waived his right to counsel.
FINDINGS OF FACT
A pretrial hearing was conducted before me on July 10 and July 11, 1980. Police Officer McPherson was the only witness called and I make the following findings of fact.
On April 19, 1980, at approximately 7:00 p.m., Police Officer McPherson, along with two fellow police officers, was sitting in an unmarked police vehicle in the vicinity of 2359 Southern Boulevard, Bronx County. The police officers were on a narcotics patrol and had the apartment building at that address under observation. At about this time, the defendant drove up in a lavender Buick Riviera, double-parked his vehicle in front of the particular building under observation, got out of his vehicle and entered the apartment building. The officers stayed in their unmarked police vehicles keeping both defendant’s vehicle and the apartment building under observation. The officers stayed at this post for approximately 25 minutes, and then, after having made note of the license plate number and a description of the vehicle, returned to the precinct house. At the precinct, one of the officers ran a name check of the defendant (the officer having known the defendant from a prior issuance of a summons) and also ran a check on the license plate number of the vehicle defendant was driving. The check on the defendant himself revealed that the defendant was operating a motor vehicle while his license was suspended; said license having been suspended *450 eight times, the last date being October 24, 1979. The check on the license plate revealed that it was an improper plate for the vehicle defendant was driving.
The officers then returned to the vicinity of 2359 Southern Boulevard and parked their unmarked police vehicle on Southern Boulevard in a northbound direction. Defendant’s automobile was still double-parked at the same location. The total amount of time the officers had absented themselves from the location approximated 15 min: utes. Within 5 to 10 minutes after the officers had returned to the location, defendant was seen to come out of the building located at 2359 Southern Boulevard, get into his double-parked car, and drive in a southerly direction on Southern Boulevard. The officers proceeded to follow defendant by making a “U” turn. The defendant stopped for a red light at 182nd Street and Southern Boulevard, then made a right turn on 182nd Street and proceeded westbound to Prospect Avenue, made another right turn on Prospect Avenue and proceeded northbound to Garden Street, where defendant parked his car on the corner of Prospect and Garden. The defendant exited his car at which time the officers pulled up with their vehicle and asked him for his driver’s license, registration and insurance form. When he produced none of these, defendant was placed under arrest for driving with a suspended license, a class A misdemeanor, in violation of section 511 of the Vehicle and Traffic Law.
Immediately upon placing the defendant under arrest, the officer gave the defendant Miranda warnings from memory. After the giving of the Miranda warnings, the defendant was informed by the police officer that he was going to be searched when he got down to the station house and asked whether the defendant had any contraband on him. At this time, the defendant reached down toward his sock, but before he was able to do so himself, Police Officer McPherson reached down and took out of the sock a little piece of plastic wrapped up at the ends into a knot. In the plastic itself were 14 capsules containing cocaine, the subject matter of the suppression. Defendant was then asked what was in the plastic and he replied, “It is coke. I got it in Harlem and paid somewhere around $100 for it.”
*451 The giving of the Miranda warnings by Police Officer McPherson was from memory without the aid of any written forms. Whether or not complete Miranda warnings were given by Officer McPherson is questionable, since on direct examination he had to be prodded by the Assistant District Attorney before he was able to say that he had advised defendant that anything that was said may be used against defendant. On cross-examination, when asked to repeat those rights again, the officer was unable to recall the right that an attorney would be provided for the defendant if he could not afford one. Under the circumstances here, the court finds that full and adequate Miranda warnings were not given to the defendant.
CONCLUSIONS OF LAW
I make the following conclusions of law: Where a police officer has reasonable cause to believe that a person is committing an offense in the police officer’s presence, CPL 140.10 authorizes the police officer to arrest that person. CPL 150.10 and 150.20, however, provide that whenever a police officer is authorized to make an arrest pursuant to CPL 140.10 for an offense other than a felony, he may instead issue to and serve upon such person an appearance ticket. u
The court finds that the arrest here was a lawful one. Although there was no probable cause for the police officer to suspect that the defendant was dealing in drugs or for that matter had any drugs in his possession, the police officer did have the knowledge that the defendant had a suspended license and his observation as to the defendant driving gave him the authority, under CPL 140.10, to place the defendant under arrest. This was not a pretext arrest, even though the officer had the alternative to give the defendant an appearance ticket.
Public policy argument favors the issuance of appearance tickets where appropriate rather than arresting citizens where minor offenses are involved. This is not to vitiate the rights of a police officer to make a formal arrest for a minor offense committed in his presence.
The issue that remains is that once there is a custodial arrest for a traffic misdemeanor, is the officer authorized to *452 make a full-scale search of defendant’s person. The United States Supreme Court has held: “A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment.” (United States v Robinson, 414 US 218, 235.) Since the court has held that the arrest here was a lawful one, it follows under the Robinson case that defendant’s Federal constitutional rights were not violated. However, the defendant, relying on prior decisions of the New York Court of Appeals in People v Marsh (20 NY2d 98); People v Adams (32 NY2d 451); People v Troiano (35 NY2d 476) and People v Howell (49 NY2d 778) argues that stricter standards may be applied and were applied by the State in not allowing into evidence material seized incident to a lawful arrest. I agree.
In Marsh, the defendant was arrested pursuant to an arrest warrant issued in 1965 for a traffic violation, speeding, committed in 1963. Immediately upon making the arrest, the police officer searched the defendant, took from his pocket a book of matches and, opening the match cover, found a sheet of paper which implicated defendant in the playing of policy. In reversing his conviction, the Court of Appeals held that no search is authorized as incident to an arrest for a traffic infraction, regardless of whether the arrest is made pursuant to a warrant, unless the search is “ ‘for weapons or for the fruits of or implements used to commit the crime’” (supra, p 101).
In Adams, the defendant was placed under arrest for a traffic misdemeanor and the police officer immediately thereafter conducted a search of the defendant’s person. The search disclosed marihuana in his coat pocket and a search of the car disclosed additional marihuana.
The Court of Appeals held that a violation of section 422 of the Vehicle and Traffic Law (altered identification numbers), a traffic misdemeanor, will not sustain a full-scale *453 search. A warrantless search incident to arrest is permitted to seize fruits, instrumentalities and other evidence of the crime for which the arrest is made in order to prevent its destruction or concealment and remove weapons that the arrested person" might seek to use to resist arrest or affect his escape.
The two foregoing cases govern here. A full-blown search was contemplated and conducted here. Obviously, it was not a search for the fruits or the implements of the crime for which defendant was arrested, and it was not a “frisk” for weapons. Neither can it be contended that defendant’s movement to his sock was a suspicious one, because this was in response to the police officer’s request for any contraband, since the defendant was going to be searched in any event at the precinct.
The People, relying on People v Troiano (35 NY2d 476, supra) argue that a full-blown search is warranted as an incident to a lawful arrest. In Troiano, defendant was arrested pursuant to a warrant issued six days earlier authorizing his arrest upon the misdemeanor charge of driving with a suspended license (Vehicle and Traffic Law, § 511). The arresting officer exhibited the warrant and told defendant he was under arrest. He then asked Troiano to place his hands on the police car and began “a search or frisk of his person.” A “hard object” in the waistband of the defendant’s trousers was found to be a loaded revolver. The Court of Appeals held that the search here of defendant’s person was authorized, being incident to a lawful arrest.
The Troiano case is distinguishable from the case at bar on two points.
(1) The officer in Troiano had a warrant for defendant’s arrest and therefore the alternative appearance ticket was not available to him; and (2) The search in Troiano was a “mere frisk” or a search only for weapons.
The facts of this case fall squarely within the rules laid down in Marsh and Adams which were not overruled by the Troiano decision. The Court of Appeals there stated (35 NY2d 476, 478, supra) “There is, perhaps, an area of traffic violation ‘arrest’ where a full-blown search is not justified, but it might seem to be confined to a situation where an *454 arrest was not necessary because an alternative summons was available or because the arrest was a suspect pretext” (cf. People v Marsh, 20 NY2d 98, supra; People v Adams, 32 NY2d 451, 455, and dissenting opn at pp 456-457, supra).
Troiano is clearly distinguishable from this case, for in Troiano, the officer was searching only for weapons. Here, the nature of the officer’s search was clearly contemplated to be a full one, not only for weapons but for other types of contraband, particularly narcotics, for which reason the officers had defendant under observation. Furthermore, the officer testified that he knew defendant to be a known narcotic dealer.
Obviously the officers had nothing in mind in the way of evidence as “fruits or implements” for the crime of driving while license was suspended.
For all of the foregoing reasons, the motion to suppress the drugs in connection with the charge of possession of a controlled substance is granted. For the reason that the court has held that full and adequate Miranda warnings were not given to the defendant, the motion to suppress the statement in connection with the drug charge is also granted.