■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENIGNO CLASS, Appellant. — Judgment, Supreme Court, Bronx County (Murray Koenig, J.), rendered on December 10, 1981, affirmed. Concur — Asch, Silverman, Bloom and Kassal, JJ.

Carro, J. P., dissents in a memorandum as follows: Defendant was stopped for driving 5 to 10 miles above the speed limit and because the windshield on the passenger side was badly cracked. When the officers (who were not in uniform and drove an unmarked patrol car) pulled up next to him, flashed a badge and ordered him to pull over, he did so. Mr. Class got out of the car and walked back to the officers, who had also alighted. One officer asked him for his license and registration, while the other officer went over to the car. Defendant produced an insurance card and the registration, but had no license to show. As defendant and the first officer discussed this, the second officer opened the car door on the driver's side, allegedly to check the Vehicle Identification Number (VIN). There was no VIN on the car door, so the officer (testified that he) checked the dashboard, but it was obstructed by "something", which he pushed away. As he did that he saw what appeared to be the "handle of a gun sticking out from the driver's seat underneath." A .22 caliber pistol was recovered, Mr. Class was arrested and in the ensuing search of defendant, ammunition was recovered. Summonses were also issued for unlicensed operation of a motor vehicle and driving with a broken windshield. The above recitation of the facts is a distillation of the two officers' testimony, which the suppression court accepted. The officers also testified that they had no basis for believing the car to be stolen, the registration papers later checked out as valid (no radio run was made on the car at any time) and the VIN was never even copied down by the officer who allegedly searched for it. The court

below denied defendant's suppression motion by ruling that the gun had been "in plain view" when seized. The court found the initial search for the VIN to be justified, "notwithstanding any lack of probable cause to believe the car had been stolen," because "the defendant's conduct, that is, immediately exiting the car and walking over to the police car, instead of waiting in his automobile, coupled with the fact that the defendant did not have a driver's license in his possession, made these officer's actions quite reasonable and prudent under the circumstances." Such reasoning bends both logic and the law, the latter in violation of the constitutional prohibition against unreasonable searches and seizures. (US Const, 4th Amdt.) This incident occurred about 4:30 in the afternoon, on a sunny day, right before the onset of rush hour. There was not the slightest hint in the officer's testimony that this was a high crime area or that they were on any more than "routine patrol." The conclusion that defendant's act, of getting out of his car and going to the officers rather than awaiting their approach, constituted suspicious behavior, is absurd. I would do the same thing myself, if for no other reason than the recent tragedies of officers being fired upon as they approach stopped drivers might reasonably create an apprehension that would be dispelled by my exhibiting myself as clearly unarmed. The court's second point is even more illogical since, by the officer's own testimony, the search of the car by one officer began before the other had yet discovered that defendant was not a licensed driver. Since the search was conducted without any indication of impropriety or preliminary radio run on the license plate, the police action was no more than a wrongful trespass, and the plain view doctrine is inapplicable. (*Coolidge v New Hampshire,* 403 US 443, 466, 472.) As the Court of Appeals stated many years ago, "[t]here is no question, and the entire court agrees, that a police officer is not authorized to conduct a search every time he stops a motorist for speeding or some other ordinary traffic infraction." (*People v Marsh,* 20 NY2d 98, 100 [per Fuld, Ch. J.], as affd in *People v Howell,* 49 NY2d 778, 779.) And while the alleged premise here — to search for the VIN — was less intrusive than a full-blown inventory, it still constituted an impermissible search since there was absolutely no predicate for believing the car was stolen. (*Cotton v United States,* 371 F2d 385, 393-394; *People v Gohn,* 49 AD2d 585.) Nor was there any lawful arrest to which the search was incident. (*People v Erwin,* 42 NY2d 1064, 1065.) Since the officer had no right to be in the car, his observation of the gun handle may not be sanctioned by the plain view doctrine. (*Coolidge v New Hampshire, supra; People v Gohn, supra.*)